UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

SUZANNE LUCAS,                              :
                                            :
                                            :
                              Plaintiff,    :
                                            :         24-CV-7561 (VEC)
             -against-                      :
                                            :         OPINION & ORDER
HARTFORD LIFE AND ACCIDENT                  :
INSURANCE COMPANY,                          :
                                            :
                                            :
                              Defendant.    :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff Suzanne Lucas brought this action pursuant to the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging the decision by

Defendant Hartford Life and Accident Insurance Company ("Hartford"), her long-term disability

insurer, to terminate certain benefits.  Hartford moved for summary judgment on the ground that

Plaintiff failed to exhaust her administrative remedies.  *See* Mot. for Summary Judgment, Dkt. 66

(the "Motion" or "Mot.").  Plaintiff opposed.  *See* Plaintiff's Memorandum of Law in Opposition

to Mot., Dkt. 78 ("Opp.").  The Motion is DENIED.

## BACKGROUND

Plaintiff is a beneficiary of a long-term group disability insurance plan administered by

Hartford (the "Plan").  Statement of Facts ("SOF"), Dkt. 84 ¶¶ 1–6.[1]  The Plan consists of  "1)

---

[1]      Pursuant to Local Civil Rule 56.1(b), the party opposing summary judgment must respond to the movant's
56.1 statement with "a correspondingly numbered paragraph responding to each numbered paragraph in the
statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise
statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  *Id.*
56.1(b).  Plaintiff's Counterstatement of Material Facts, Dkt. 77, makes no attempt to comply with Rule 56.1(b).
Plaintiff challenges nearly every assertion Defendant sets forth in the 56.1 Statement with argumentative bluster and
irrelevant asides, even when she does not dispute the fact being asserted.  *See, e.g.*, SOF ¶ 133 (Plaintiff responding
to the assertion that "[i]n his March 7, 2024 letter, which was sent via facsimile, Attorney Delott requested that

The Policy; 2) any certificates incorporated and made a part of The Policy; [and] 3) any riders issued in connection with such certificates . . . ." *Id.* ¶ 173.  The Plan provides, in relevant part, that if a claim is denied, the claimant will be provided with a "written notification" that "will . . . provide an explanation of the review procedure." *Id.* ¶ 13.

In 2021, Plaintiff claimed that she was unable to work due to a disability, and she began receiving benefits through the Plan.  *Id.* ¶¶ 7; 31–33.  In January 2024, Hartford notified Plaintiff that she would be required to undergo an independent medical examination ("IME") in order to continue receiving benefits.  *Id.* ¶¶ 100, 103–04, 109.  Plaintiff attended the IME, but she refused to provide photo identification or sign paperwork and left before the exam was complete.  *Id.* ¶ 116.

On February 28, 2024, Hartford sent Plaintiff a letter (the "Denial Letter") informing her that it would no longer pay her disability benefits.  *Id.* ¶ 126.  In the Denial Letter, Hartford explained the appeal procedures, including a directive to "send [her] appeal letter" to a P.O. Box in Lexington, Kentucky.  *Id.* ¶¶ 130–31.  The Denial Letter also informed Plaintiff that the appeal must be submitted within 180 days of the denial of benefits.  *Id.* ¶ 130.

After receiving the Denial Letter, Plaintiff's counsel emailed various questions about the decision to Tonya Walsh, the claims adjuster at Hartford who signed the Denial Letter.  *See*

---

Hartford provide him with a complete copy of Lucas' claim file," by stating, among other things, "Admit that pursuant to the second subsection of the Plan Claim Appeal section, the letter requested relevant information as defined by ERISA.  Admit the second subsection of the Plan Claim Appeal section states that it 'may' be done if pursuing a Claim Appeal." (citations omitted)); *id.* ¶ 146 (Plaintiff responding to the assertion that she "filed her Complaint in this case, alleging that she submitted an appeal to Hartford by letter dated August 20, 2024" by stating, among other things, "Admit Ms. Lucas submitted medical and vocational evidence that proved she remains disabled under the Plan.").  Her statement of additional material facts is equally egregious, incorporating assertions that are clearly irrelevant to anything at issue in this Motion.  *See, e.g.*, *id.* ¶ 154 ("Ms. Lucas graduated from high school in 1998."); *id.* ¶ 325 ("Linda Silecchia described how her niece has become riddled with body aches, has difficulty regulating her body temperature, stays near a bathroom, and naps.").  The result is an unwieldy document that does not in any way assist the Court with navigating the record.  For the umpteenth time in this case, Plaintiff's counsel is admonished to conduct himself professionally.  Continued unprofessional behavior will result in sanctions.

Lunemann Decl. Ex. B-1, Dkt. 71-2 at 256–259.[2]  During one of these exchanges, Ms. Walsh reminded Plaintiff that "the next step is to file an appeal." *Id.* at 257.  Plaintiff's counsel continued to correspond with Ms. Walsh, which prompted Jamie Rivera, another member of the claims department at Hartford, to write to him: "The decision has been made on the claim and if you disagree, please submit your formal appeal and once it is received, it will be sent to the appeal department for handling." SOF ¶ 136.  Plaintiff's counsel continued to send emails to Walsh and Rivera, and, after several more exchanges in which Rivera reminded the attorney to submit a formal appeal, Rivera wrote:

> [T]he decision has been made on Ms. Lucas's claim.  Again, as a reminder, there is a 180 day period allowed to file an appeal from the date of the termination letter, if you do not agree with the decision rendered on Ms. Lucas's long term disability claim, please submit the formal appeal.  All of your questions and there will be not futher [*sic*] communication from me, and any oustanding [*sic*] questions that you have you may include in the appeal.  Once the appeal letter is received, Ms. Lucas' claim will be forwarded to the appeal department for further handling.

*Id.* ¶ 143.

On August 20, 2024 — approximately three months after the final email exchange between Plaintiff's lawyer and Rivera and Walsh, and 174 days after the Denial Letter was issued — Plaintiff's lawyer emailed an appeal to Walsh. *Id.* ¶¶ 131, 145–46.  The email to Walsh attached a letter addressed to the P.O. Box in Kentucky that had been identified in the Denial

---

[2]    The Court has previously admonished the parties that the evidence they have presented so far in this case has been "unwieldy," both because the attorneys' supporting declarations "contain no explanation for how the materials were excerpted or what each excerpt contains" and because "portions of the administrative record are scanned in such a way that the text is difficult, if not impossible, to read." Oct. 20, 2025, Opinion & Order, Dkt. 55 at 2 n.1.  The parties were advised "to present evidence in a more intelligible format moving forward." *Id*.  Hartford ignored the Court's advice, filing the entire 986-page administrative record as a single exhibit (divided into 12 non-descript parts, seemingly in order to comply with file size limits on ECF) and failing to rectify the problem that portions of the administrative record are partly or wholly illegible.  Because this Motion can be resolved on the merits notwithstanding the problems with Hartford's submission, the Court will do so.  The parties are advised, however, that far greater attention to detail will be necessary at trial.

Letter as the address to which appeals should be sent; Plaintiff never mailed the letter to the P.O.
Box or anywhere else.  *Id*. ¶ 152.

Hartford did not respond to Plaintiff's August 20 email within the 45-day period
mandated by the ERISA's regulations to respond to an appeal.  29 C.F.R. § 2560.503-1(i), (j).
On October 5, 2024 — exactly 46 days after her attorney sent the email to Walsh  — Plaintiff
filed this action.  Compl., Dkt. 1.

Hartford claims that it was not aware that Plaintiff had sent an "appeal" to Walsh until a
January 15, 2025, teleconference with the Court during which Plaintiff's counsel finally
disclosed to Hartford's counsel that he had emailed the appeal to Ms. Walsh, rather than mailing
the appeal to the P.O. Box identified in the Denial Letter.  SOF ¶ 148.  Since then, Hartford has
made multiple offers to Plaintiff to stay the case and to remand Plaintiff's claim to Hartford for
further review.  *See* Mar. 18, 2025, Motion for Leave, Dkt. 30-2, Ex. B., at 3–5.  Plaintiff
declined those offers, and the Court declined to order remand.  *See* Oct. 20, 2025, Opinion &
Order, Dkt. 55.

After obtaining leave to do so from the court, Hartford filed the instant Motion for
Summary Judgment, arguing that Plaintiff failed to exhaust her administrative remedies prior to
filing this action.  *See* Mot.  Plaintiff opposed.  *See* Opp.

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Where the record
taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Only disputes over facts that might affect the outcome of the suit or the governing law" preclude summary judgment. *SJN Properties LLC v. Harleysville Insurance Co.*, 738 F. Supp. 3d 405, 411 (S.D.N.Y. 2024) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). On a motion for summary judgment, the Court must construe the facts in the light most favorable to the non-moving party; however, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (internal quotation marks and citation omitted).

The sole issue to be resolved on summary judgment is whether, as a matter of law, Plaintiff failed to exhaust the administrative remedies available to her pursuant to the Plan.

## II.    Hartford Has Not Demonstrated that, as a Matter of Law, Plaintiff Failed to Exhaust her Administrative Remedies

ERISA requires insurers to provide procedures for internal dispute resolution for plan-related disputes relating to, among other things, "the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations." 29 C.F.R. § 2560.503-1(b). Before initiating a lawsuit to challenge a coverage determination pursuant to ERISA, policyholders must exhaust the internal review and appeal procedures — the "administrative remedies" — provided by their insurer. *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993); *see also Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) (although the exhaustion requirement is not included in the text of ERISA, "the federal courts—including this Circuit—have recognized a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" (quoting *Kennedy*, 989 F.2d at 594)). "Where a plan participant or beneficiary has not exhausted her administrative remedies, a

plan defendant is entitled to dismissal or summary judgment."  *Morillo v. 1199 SEIU Benefit and Pension Funds*, 783 F. Supp. 2d 487. 493 (S.D.N.Y. 2011) (collecting cases).

ERISA requires that beneficiaries be given "adequate notice" of the adjudicative and appellate processes relevant to their claims and a "reasonable opportunity" for a "full and fair review" of any claim denial.  *See* 29 U.S.C. § 1133(1)–(2).  In general, "exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy." *Kennedy*, 989 F.2d at 594.  Courts in this Circuit, however, have "indicated that non-plan documents with an explanation of the appeal process are sufficient to meet the ERISA requirements of 'adequate notice' of claim adjudication and a 'reasonable opportunity' for full and fair review."  *Benson v. Tiffany & Co.*, No. 20-CV-1289 (KPF), 2021 WL 1864035, at *8 (S.D.N.Y. May 10, 2021) (citing *Schmookler v. Empire Blue Cross & Blue Shield*, 107 F.3d 4 (2d Cir. 1997)).

Here, the Plan provides that if a claim is denied, the insured or her representative "may appeal to [Hartford] for a full and fair review."  SOF ¶ 14.  Although Plaintiff contends that the use of the word "may" renders the internal appeals process optional rather than mandatory, courts in this Circuit have repeatedly held that such language is sufficiently clear to require the insured to file an appeal with the insurer prior to filing suit.  *See Jiggetts v. CIGNA Healthcare,* No. 10-CV-4242, 2011 WL 747098, at *2 (S.D.N.Y. Feb. 1, 2011), *report and recommendation adopted*, No. 10-CV-4242, 2011 WL 746958 (S.D.N.Y. Mar. 1, 2011) ("Policy language stating that a policy holder '*may* appeal' is sufficient to establish a requirement of appeal before legal action could be taken." (emphasis in original) (internal quotation marks omitted)); *Constantini v. Hartford Life and Accident Insurance Co.*, No. 21-CV-6826, 2022 WL 1910137, at *3 (S.D.N.Y. 2022) (collecting cases for the proposition that plan language describing how a policyholder

"may appeal" a claim denial is sufficient to trigger an exhaustion requirement).  Accordingly, exhaustion was mandatory pursuant to the Plan.

The key question here is *how* Plaintiff was required to exhaust her administrative remedies; specifically, whether she was required to send her appeal to the P.O. Box for the Appeals Department as specified in the Denial Letter, or whether it was sufficient for her to send her appeal directly to the adjuster with whom she had been communicating about her claim.

Plaintiff argues that the procedure set forth in the Denial Letter is not binding because denial letters are "ineffective to amend the terms of the underlying plan, because the policy required any change to be noted on or attached to the policy."  Opp. at 12 (quoting *Smith v. Provident Life & Accident Ins. Co*., No. 17-CV-104-MCR-MJF, 2018 WL 11413304, at *5 (N.D. Fla. Sept. 28, 2018)).  The Court disagrees that the Denial Letter *amended* the terms of the Plan; the Denial Letter did not alter any portion of the Plan but, rather, instructed Plaintiff about how to file an appeal.  That is consistent with the Plan's provision that, upon rendering a decision on a claim, Hartford will provide a "written notification of the decision" that "will . . . provide an explanation of the review procedure."  SOF ¶ 13; *see Glynn v. Bankers Life & Cas. Co*., 432 F. Supp. 2d 272, 284 (D. Conn. 2005) (noting, in *dicta*, that a Summary Plan Description may "refer[] the insured to the letter of denial to obtain the specific appeals procedure for a given insurance plan"); *Benson*, 2021 WL 1864035, at *8 ("[N]on-plan documents with an explanation of the appeal process are sufficient to meet the ERISA requirements of 'adequate notice' of claim adjudication and a 'reasonable opportunity' for full and fair review.").

Regardless, the Court need not resolve whether Plaintiff was strictly obligated to send her appeal to the P.O. Box identified in the Denial Letter because her decision to send the appeal directly to Ms. Walsh was not unreasonable, as a matter of law, in light of her communications

7

with Walsh and Rivera. *Israel v. Unum Life Insurance Co. of America*, No. 21-CV-4335 (GHW) (JLC), 2023 WL 491039, at *9 (S.D.N.Y. Jan. 27, 2023), *report and recommendation adopted*, No. 1:21-CV-4335-GHW, 2023 WL 2390873 (S.D.N.Y. Mar. 7, 2023), is instructive. In that case, the insurer argued, as Hartford does here, that a claimant had failed to exhaust her administrative remedies because she did not send her appeal to the address provided in the denial letter and, instead, sent it to the employee with whom she had previously communicated about her claim. *Id.* at *9. The court disagreed, finding that it was "reasonable" for the claimant to send her appeal to the employee with whom she had been speaking. The court relied on the fact that the claimant had talked to that person on the phone about her anticipated appeal and the employee never told her to send information to the appeals department rather than to her. *Id*. To find otherwise would, in the court's view, "unduly inhibit[]or hamper[]the initiation or processing of claims for benefits" on the basis of a mere "technicality." *Id.* (citing 29 C.F.R. § 2560.503-1(b)(3)).[3]

Likewise here, Walsh and Rivera's communications with Plaintiff may have created some ambiguity as to whether it was necessary for Plaintiff to send her appeal to the P.O. Box for the Appeals Department, as outlined in the Denial Letter, or whether sending it to one of them would suffice. In their post-Denial Letter communications, Rivera told Plaintiff's counsel that Plaintiff should "submit [her] formal appeal and once it is received, it will be sent to the appeal department for handling." SOF ¶ 136. Rivera also told Plaintiff's counsel that, "[o]nce the

---

[3]    The Court also notes that in *Unum*, the insurer, despite later claiming that the policyholder did not file a proper appeal, actually reviewed the materials she submitted following the adverse benefits determination. 2023 WL 491039 at *10. That is not the case here, where Hartford insists that it was unaware that Plaintiff had sent her appeal package to Walsh until her counsel mentioned it during a January 2025 teleconference with the Court. SOF ¶ 148. Although that fact (if true) is not ultimately dispositive to the question of whether a reasonable factfinder could conclude that Plaintiff's approach was reasonable in light of her communications with Hartford, it further supports the inference that, regardless of whether Plaintiff exhausted her administrative remedies, Hartford has not acted in bad faith.

appeal letter is received, Ms. Lucas' claim will be forwarded to the appeal department for further handling." *Id.* ¶ 143. Taken together, Plaintiff could have understood that Hartford permitted a two-step appeals process: first, some entity at Hartford would "receive" an appeal letter, and second, the appeal letter would be "sent" or "forwarded" to the Appeals Department. *Id.* ¶¶ 136, 143. Those messages were not consistent with the notion that Plaintiff was *required* to send her appeal directly to the Appeals Department; instead, they implied that it was acceptable for Plaintiff to send the appeal to the people with whom she had previously communicated, who would then forward the appeal to the appropriate department.[4] Because "ERISA puts the onus on the plan administrator to establish and maintain reasonable procedures governing appeals and to clearly inform plan participants of those procedures," a reasonable factfinder could conclude that Hartford's post-Denial Letter communications with Plaintiff created enough ambiguity about the proper appeals process such that it was appropriate for Plaintiff to send her appeal to Walsh rather than to the P.O. Box. *Landry v. Metro. Life Ins. Co.*, No. 19 CIV. 3385 (KPF), 2021 WL 848455, at *12 (S.D.N.Y. Mar. 5, 2021) (citing 29 C.F.R. § 2560.503-1(b)).

If a factfinder were to so conclude, that would mean that Plaintiff appealed Hartford's decision within the required 180-day timeframe, and that Hartford failed to render a decision on Plaintiff's appeal within the 45-day period required by ERISA's regulations. *See* 29 C.F.R. § 2560.503-1(i), (j). A factfinder adopting this view could conclude, therefore, that Hartford

---

[4]    Hartford notes that Plaintiff's appeal, although sent to Ms. Walsh, was "actually addressed to Hartford using the specific mailing address [Plaintiff] was instructed to use in Hartford's initial denial letter." Def. Mem., Dkt. 67 at 11. Although Hartford seems to imply that proves that Plaintiff was aware that she was, in fact, required to send her appeal to that address, the Court is not convinced. The address contained on the letter demonstrates that Plaintiff knew the P.O. Box identified in the Denial Letter was ultimately where her appeal needed to go, but it does not undercut the notion that Plaintiff could have relied on statements from employees in the Claims Department suggesting that they (or someone else at Hartford) would forward the appeal to the appropriate department. While Hartford's motion on this score is being denied, the parties should not understand the ruling as indicating that Hartford has acted unreasonably or that Plaintiff and her counsel have acted reasonably. Knowing that the appeal needed to make its way to the P.O. Box in Kentucky, it is unfathomable why a party, represented by counsel, would not have simply dropped a copy of the letter that was emailed to Ms. Walsh into the mail for delivery to Kentucky.

effectively denied Plaintiff's appeal and, thus, that Plaintiff exhausted her administrative remedies prior to filing suit. *See McQuillin v. Hartford Life & Accident Ins. Co.*, 36 F.4th 416, 422 (2d Cir. 2022) ("By the 46th day after [a policyholder's] appeal" went unadjudicated by the insurer, he "was deemed to have exhausted his plan remedies and could bring suit in federal court."). Accordingly, summary judgment in Hartford's favor on the exhaustion issue is inappropriate.

## CONCLUSION

For the foregoing reasons, Hartford's Motion is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 66.

The parties must appear for a conference on **Tuesday, July 14, 2026, at 10:30 A.M.** in Courtroom 20C of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York, 10007. Every attorney who expects to participate in the trial must attend the conference. The parties must meet and confer prior to the conference and be prepared to discuss (1) the estimated length and scope of the bench trial, (2) three mutually agreeable dates on which to hold the trial, and (3) any other proposed next steps that either party believes are appropriate. Additionally, to the extent Plaintiff intends to seek a remedy other than remand at trial, she should be prepared to explain the factual and legal basis for pursuing such a remedy at the conference.

Plaintiff is directed to review once again the Court's October 28, 2025, Order, Dkt. 57, in addition to this Order.  Not later than **July 7, 2026**, Plaintiff must file a sworn declaration on the docket confirming that (1) she has reviewed both orders and (2) she understands that, if the Court finds that she lacks a good-faith basis for repeatedly declining Hartford's offer of remand, she or her attorney may be required to pay any fees Hartford has accrued in continuing to defend this action.

**SO ORDERED.**

Date:  June 18, 2026
       New York, New York

_____
　　　 **VALERIE CAPRONI**
**United States District Judge**